USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/26/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

TGS-NOPEC GEOPHYSICAL COMPANY,

                Petitioner,

- against -

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC.,

                Respondent.

------------------------------------------------------- X

**MEMORANDUM**
**OPINION AND ORDER**

08 Civ. 10950 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

**I.    INTRODUCTION**

        TGS-NOPEC Geophysical Company ("TGS") brings this suit against Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), requesting injunctive relief in support of arbitration currently pending before the Financial Industry Regulatory Authority ("FINRA"). TGS alleges that Merrill's procedure for the redemption of Auction Rate Securities ("ARS") violates New York Stock Exchange ("NYSE") Rule 402.30 and therefore violates Merrill's contract with TGS. TGS now moves for a preliminary injunction ordering Merrill to cease

redemption of ARS using its current procedure and to reallocate completed redemptions retroactively. For the reasons that follow, TGS's motion is denied.

## II. BACKGROUND

### A. Redemption of Auction Rate Securities

Merrill Lynch is a corporation involved in numerous areas of banking, investment, and finance.[1] One portion of its business is to underwrite ARS, a type of security whose liquidity depends on a periodic Dutch auction. The underwriters of ARS serve as lead managers of these periodic auctions. In February 2008, after a series of auction failures, the ARS market froze. While investors holding ARS continued to collect interest at par value, they could not sell the underlying shares.

In May 2008, Merrill Lynch began discussions with FINRA as to a procedure for executing partial redemptions of ARS.[2] By redeeming a portion of ARS, Merrill would restore some of its customers' liquidity. Two months later, Merrill Lynch inserted in customers' June statements a document titled

---

[1] Formerly independent, Merrill was recently acquired by Bank of America to form the largest bank in the United States. *See* Andrew Ross Sorkin, *Merrill Reportedly Paid Bonuses Early as Merger Closed*, N.Y. Times, Jan. 22, 2009.

[2] *See* 1/12/09 Declaration of George A. Schieren, respondent's counsel, ¶¶ 2, 5-6, 9.

"Additional Information Regarding Your Auction Rate Securities," which laid out the planned redemption scheme.[3] Specifically, when an issuer declared a partial redemption, Merrill would call one $25,000 share from each client account, then allocate the remaining shares through a proportionate lottery, "under which the probability of a client's shares being selected will be in proportion to all such ARS securities held in that client's account."[4] A significant number of redemptions have already occurred, and redemptions are ongoing.[5]

### B.   The Dispute Between TGS and Merrill Lynch

TGS-NOPEC is the U.S. subsidiary of a Norwegian geophysical exploration company. As of October 2008, TGS held ARS in Merrill Lynch accounts with a value of approximately $64.5 million.[6] As a large institutional

---

[3]   *See* 6/30/08 Statement Insert, Ex. A to 1/8/09 Declaration of Rod Elder, Director of Statement Quality Assurance and Securities Pricing, Merrill Lynch.

[4]   *Id. Accord* 1/9/09 Declaration of Paul Mottola, Managing Director, Merrill Lynch (describing the same procedure as having been used in partial issuer redemptions that have already occurred).

[5]   Merrill Lynch asserts (without citation) that billions of dollars in redemptions have already occurred. *See* Opposition to Petition for Injunction Pending Arbitration ("Resp. Mem.") at 4, 18.

[6]   *See* 10/8/08 Account Statement, Ex. M to 12/17/08 Declaration of Todd A. Higgins, petitioner's counsel ("Higgins Decl."). Merrill Lynch asserts

investor, the Merrill Lynch redemption scheme disfavors TGS. Under the Merrill Lynch scheme, an ARS share is more likely to be redeemed if held by a retail investor than if it is held by TGS, due to the first-step distribution on a one-per-customer basis.

On November 19, 2008, TGS initiated an arbitration before FINRA, requesting repurchase of its ARS with interest, rescission of purchases, or actual damages of the par value of its ARS holdings.[7] On December 17, 2008, TGS filed this petition for an injunction pending arbitration. Specifically, TGS requested that this Court order Merrill Lynch to: (a) allocate future partial ARS redemptions strictly in proportion to holdings and (b) reallocate prior partial redemptions strictly in proportion to holdings.[8]

---

(without citation) that it has redeemed $32 million in ARS previously held by TGS. *See* Resp. Mem. at 4, 18.

[7] *See* 11/19/08 Statement of Claim, Ex. B to Higgins Decl.

[8] Petition, Request for Relief.

4

## III. APPLICABLE LAW

### A. Preliminary Injunction

"'The district court has wide discretion in determining whether to grant a preliminary injunction . . . .'"[9] Nonetheless, "'[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'"[10] "'A party seeking a preliminary injunction in this circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'"[11]

"'To satisfy the irreparable harm requirement, [petitioner] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is

---

[9] *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consolidated Edison*, 409 F.3d 506, 511 (2d Cir. 2005)). *Accord Somoza v. New York City Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir. 2008) (noting that a district court decision concerning a preliminary injunction is reviewed for abuse of discretion).

[10] *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

[11] *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004)).

neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'"[12] Moreover, irreparable harm by definition "'cannot be remedied by an award of monetary damages.'"[13] In determining whether a plaintiff has demonstrated a likelihood of success on the merits of the "ultimate case, a court is not called upon finally to decide the merits of the controversy. It is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief."[14]

## B. Certainty of Damages

Under New York contract law, "damages . . . 'must be not merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach of the contract.'"[15]

---

[12]  *Grand River*, 481 F.3d at 66 (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).

[13]  *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005) (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)). *Accord Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue.").

[14]  *Gibson v. U.S. Immigration & Naturalization Serv.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982) (citation omitted).

[15]  *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (quoting *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101

However, "'[c]ertainty,' as it pertains to general damages, refers to the fact of damage, not the amount."[16]

> [T]he burden of uncertainty as to the amount of damage is upon the wrongdoer .... The plaintiff need only show a 'stable foundation for a reasonable estimate of the damage incurred as a result of the breach. Such an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection.[17]

## IV. DISCUSSION

Even assuming *arguendo* that the current redemption procedures violate the contract between TGS and Merrill Lynch – a question to be fully resolved in FINRA arbitration – TGS will not suffer irreparable harm in the absence of preliminary injunctive relief. Any harm suffered by TGS as a result of improper redemption procedures can be remedied by monetary damages. In fact, money is precisely what TGS seeks in arbitration, whether it comes in the form of a buyback, rescission of a purchase, or damages. The crux of TGS's argument is that even if FINRA later declares the redemption procedures improper, it will be

---

N.Y. 205, 209 (1886)).

[16] *Id.*

[17] *Id.* (internal quotations omitted).

impossible to calculate the *quantity* of damages resulting from past harm that has resulted from improper redemptions that have already occurred.

The mere fact that one element of a calculation of general damages consists of a probability does not render the calculation speculative.[18] Rather, probabilities may be used to develop a "stable foundation for a reasonable estimate"[19] and are a routine component of damages calculations.[20] Here, should FINRA find that Merrill Lynch improperly carried out partial redemptions, damages may be determined by modeling and recreating the auctions based on the status quo prior to the commencement of the improper redemptions.[21] As Merrill aptly notes, this modeling exercise is *precisely* what TGS asks the Court to order

---

[18]    See *Crichfield v. Julia*, 147 F. 65, 70 (2d Cir. 1906) (noting that damages are speculative only when the probability at issue is itself conjectural).

[19]    *Tractebel Energy*, 487 F.3d at 110.

[20]    See, e.g., *Petrilli v. Federated Dept. Stores, Inc.*, 838 N.Y.S.2d 673, 677 (3d Dep't 2007).

[21]    Unlike control of a corporation, there is no "intrinsic value" in the proper distribution of funds. *Cf. Oracle Real Estate Holdings I, LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 625 (S.D.N.Y. 2008) ("[W]here the contract right has "intrinsic value" that cannot easily be quantified, the bargained-for provisions may provide a basis for injunctive relief." (citing *Wisdom Import Sales Co. LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 114 (2d Cir. 2003))). The value of ARS redemptions are quite easily quantified.

with regard to redemptions that have already occurred.[22] Thus TGS has all but admitted that the harm it suffers from any improper redemption procedure may be remedied after the fact. Absent irreparable harm, this Court will not issue a preliminary injunction.

## V. CONCLUSION

For the foregoing reasons, TGS's motion for a preliminary injunction is denied. The Clerk of the Court is directed to close this motion (Docket No. 4). A conference is scheduled for February 25, 2009, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         January 26, 2009

---

[22]   See Resp. Mem. at 17 (noting that petitioner requested that this Court order respondent to correct the prior allocation of partial redemption calls by "reallocating the partial redemptions").

9

## - Appearances -

**For Petitioner:**

Dayton Peter Haigney, III, Esq.
Todd Andrew Higgins, Esq.
Crosby & Higgins, LLP
60 East 42nd Street
47th Floor
New York, NY 10165
(646) 452-2300

**For Respondent:**

Timothy P. Burke, Esq.
Bingham McCutchen LLP
One Federal Street
Boston, Massachusetts 02110
(617) 951-8000